In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-522 CV


____________________



SHEILA B. THURLOW, Appellant



V.



THOMAS N. THURLOW, Appellee






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 03-06-04277 CV






MEMORANDUM OPINION


 In twelve issues, appellant Sheila B. Thurlow ("Sheila") challenges the process by
which the trial court characterized and divided certain items of property in the course of
dissolving her marriage to appellee, Thomas N. Thurlow ("Thomas"). There were no
children born of the marriage and neither party takes issue with the trial court's finding that
the marriage had become insupportable. For the reasons stated herein, we affirm the trial
court's judgment as reformed. We will group the appellate issues for discussion whenever
possible. 

BACKGROUND


 The parties were married on November 18, 1994. Sheila filed her original petition for
divorce on June 13, 2003, and Thomas counter-petitioned for divorce on November 6, 2003. 
On June 3, 2004, the trial court granted a motion for partial summary judgment in Thomas's
favor ruling that a written premarital agreement, executed by the parties on November 16,
1994, was enforceable. Trial of the divorce took place on July 24, 2006, however neither
Sheila nor her trial counsel were present although each had actual notice of the day and time
of trial. The final decree of divorce was signed on September 13, 2006. In the decree, the
trial court appointed a receiver to sell the marital residence and distribute the proceeds
pursuant to the decree's property division. In a supplemental order appointing the receiver,
signed on October 3, 2006, the trial court waived the need for the receiver to post a bond. 
The record also contains the receiver's oath. Sheila requested findings of fact and
conclusions of law, which the trial court issued on November 9, 2006. The receiver found
a buyer for the marital residence. The trial court approved the contract for sale, the receiver's
report of the sale, and ordered disbursement of the proceeds as set out in the divorce decree. 
This order, signed by the trial court on July 12, 2007, also approved the receiver's final
accounting, discharged the receiver and dissolved the receivership.

 A docket-sheet entry in the court's record indicates that on February 8, 2006, Sheila
and Thomas were present in open court along with their respective trial counsel at which time
the trial court agreed to reset the trial date to April 24, 2006. However, on April 23, 2006,
Sheila filed for bankruptcy, thereby causing the trial set for the following day to be postponed
until July 24, 2006. Three days before the July 24 trial date, Sheila apparently fired her trial
counsel. On the day of trial, Sheila filed a pro se document at 8:15 a.m. which she titled as
follows: 

 THIS EMERGENCY MOTION IS TO COMPEL THIS COURT TO
CANCEL THE DIVORCE PROCEEDING SCHEDULED TO BEGAN [sic]
TODAY July 24, 2006 at 9:00 a.m. DUE TO JUST CAUSE IN SHEILA B.
THURLOW'S THREE PAGE MOTION FILED THE MORNING OF July 24,
2006 PRIOR TO JURY SELECTION. THIS MOTION CONSISTS OF A
REQUEST FOR JUDGE FRED EDWARDS TO RECUSE HIMSELF.


This "emergency motion" included Sheila's motion to recuse the trial judge, and attached as
"Exhibit # 1" is a copy of a letter to her trial counsel requesting that said counsel withdraw
as her divorce attorney of record. Pertinent to issues presented in the instant appeal is the
content of the letter's last paragraph, which reads as follows:

 Since my only legal representation is my bankruptcy lawyer and I have filed
an appeal to reverse the decision to allow this divorce to go forward, I will not
be present Monday morning for a trial in the state court. I will be filing a
motion relating to all of this on Monday morning prior to trial. 


 The record further indicates that upon the filing of her emergency and recusal motion,
Sheila left the courthouse and was not present when her recusal motion was heard later that
morning by Judge Olen Underwood, although her trial counsel did appear at the recusal
hearing but presented no evidence in support of said motion. Judge Underwood denied the
recusal motion after a brief hearing. The trial of the divorce commenced shortly thereafter
with neither Sheila nor any counsel appearing on her behalf. Upon motion of Thomas, the
jury was waived and all issues were submitted to the court.

 Thomas testified in support of his counter-petition for divorce and property division,
and a number of his documents and records were admitted into evidence by the trial court. 
Among Thomas's exhibits introduced during trial were his sworn inventory and
appraisement, a financial statement of Thomas's monthly income and expenses, a copy of
the prenuptial agreement designating certain accounts and the assets of Thomas's law
practice as his sole and separate property in the event of a divorce, and a copy of Thomas and
Sheila's post-nuptial agreement setting out each party's interest in the marital residence in
the event of a divorce. 

 Because the parties do not question the insupportability of their marriage, nor are there 
any children of the marriage, only matters of property division and debt allocation remain as
a source of contention on appeal. It is within this context that Sheila presents her issues,
most of which complain of the appointment and actions of the receiver, and of the trial
court's division of the marital estate. Sheila's other issues raise improper disposition of her
tort actions by the trial court, excessively high supersedeas bond set by the trial court, and
erroneous characterization of Thomas's corporate law firm as his separate property. We
begin, however, with Sheila's sixth issue which asserts that the divorce decree was entered
while a motion to recuse the trial judge remained pending. 

RECUSAL MOTIONS 


 The record indicates Sheila filed two separate pro se motions to have the trial judge
recused; the first filed on the day the divorce trial took place, July 24, 2006, and the second
filed on August 24, 2006, one month after the conclusion of the trial. The first recusal
motion was heard by the administrative judge and was denied. Sheila failed to attend the
hearing. Sheila asserts the second recusal motion was brought to the trial court's attention
and that the trial court declined to rule on it. She contends that the second recusal motion
was filed pursuant to Rule 18a of the Texas Rules of Civil Procedure, and it was error for the
trial court to refuse to rule on it. See Tex. R. Civ. P. 18a. We disagree.

 A denial of a motion to recuse is reviewed for abuse of discretion on appeal. Tex. R.
Civ. P. 18a(f). A motion to recuse must be filed at least ten days before the date of the 
hearing or trial over which the judge is to preside. Id. 18a(a). The El Paso Court of Appeals
in Wright v. Wright, noted: 

 When a motion to recuse a judge is filed, the judge must either recuse
him- or herself or request the administrative judge to assign another judge to
hear the motion. In either case, the judge is prohibited from taking any further
action in the case until the motion to recuse has been resolved. The mandatory
provisions in Rule 18a, however, never come into play unless and until a
timely motion to recuse is filed. 


 The record in the instant case shows that Appellant did not file a timely
Motion to Recuse the trial judge. Consequently, we find Rule 18a inapplicable
in this case. 


Wright v. Wright, 867 S.W.2d 807, 811 (Tex. App.--El Paso 1993, writ denied) (citations
omitted). See also Blackwell v. Humble, 241 S.W.3d 707, 712-13 (Tex. App.--Austin 2007,
no pet.); McElwee v. McElwee, 911 S.W.2d 182, 185-86 (Tex. App.--Houston [1st Dist.]
1995, writ denied). On the face of the record, both of Sheila's recusal motions were filed
untimely and no reasonable explanation was offered by Sheila for the untimely filing. 
Additionally, neither motion was verified in further violation of Rule 18a(a). See In re
DeMayo, No. 09-05-074 CV, 2005 WL 857066, at *1 (Tex. App.--Beaumont 2005, no pet.)
(mem. op. on reh'g) (failure to comply with procedural requisites for recusal waives
complaint); McElwee, 911 S.W.2d at 186. Under the circumstances presented in the record,
we find no abuse of discretion and overrule Sheila's sixth issue. (1) 

CHARACTERIZATION OF THOMAS'S LAW PRACTICE AND THE MARITAL ESTATE


 

 Sheila's first two issues contend the trial court erred in characterizing Thomas N.
Thurlow & Associates, P.C. as the separate property of Thomas, and further erred in
characterizing the marital residence as part of the community estate instead of designating
the residence her sole and separate property. When reviewing alleged property
characterization error, an appeals court must determine whether the trial court's finding is
supported by clear and convincing evidence and whether the characterization error, if
established, caused the trial court to abuse its discretion. See Prague v. Prague, 190 S.W.3d
31, 38 (Tex. App.--Dallas 2005, pet. denied). Abuse of discretion occurs when a trial court
acts without reference to any guiding rules or principles, or, in other words, acts in an
arbitrary or unreasonable manner. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990);
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). Issue one is
based on provisions contained in a premarital agreement, while issue two centers upon a
property agreement executed by the parties during the marriage.

 All property acquired by either spouse during the marriage belongs to the marital
estate, with the exception of property acquired by gift, devise, or descent. Tex. Const. art.
XVI, § 15; Tex. Fam. Code Ann. § 3.002 (Vernon 2006); see also Free v. Bland, 369 U.S.
663, 664 n.1, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962). However, the Texas Constitution
explicitly recognizes the right of couples to enter into premarital or marital agreements, the
purpose of which is to alter the classification of spousal or community property. Tex.
Const. art. XVI, § 15. Chapter 4 of the Texas Family Code also explicitly provides for such
agreements. See Tex. Fam. Code Ann. §§ 4.001-.206 (Vernon 2006). Indeed, the
legislature and the people have made it public policy in Texas that premarital and marital
agreements should be enforced. See Beck v. Beck, 814 S.W.2d 745, 749 (Tex. 1991);
Sheshunoff v. Sheshunoff, 172 S.W.3d 686, 694 (Tex. App.--Austin 2005, pet. denied). As
a result, agreements entered into between parties before and during marriage are
presumptively enforceable. See Sheshunoff, 172 S.W.3d at 694; Grossman v. Grossman, 799
S.W.2d 511, 513 (Tex. App.--Corpus Christi 1990, no writ).

 In the premarital agreement, executed two days before the marriage in November of
1994, the parties agreed that Thomas's then-existing law firm would remain Thomas's
separate property, and in the event of divorce, Thomas would be entitled to all assets of the
firm "or its successors" as his sole and separate property. Notwithstanding the terms of the
premarital agreement, Sheila argues in issue one that because Thomas N. Thurlow &
Associates, P.C. was not named in the premarital agreement, the trial court erred in awarding
it to Thomas. 

 With regard to issue one, Sheila had the burden at trial of proving that the premarital
agreement was unenforceable. See Tex. Fam. Code Ann. § 4.006(a); Sheshunoff, 172
S.W.3d at 694. Sheila presented no evidence as neither she nor her counsel were present for
the trial. The trial court previously granted a partial summary judgment ruling that the
premarital agreement was enforceable. 

 When construing a written contract, our primary concern is to ascertain the true intent
of the parties as expressed in the instrument. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983). The premarital agreement specifically provides that in the event of divorce, Thomas
was entitled to all assets of "Thomas N. Thurlow and Associates, Inc., or its successors as
his sole and separate property." With regard to premarital agreements, the Texas Family
Code defines "property" quite broadly, viz: "an interest, present or future, legal or equitable,
vested or contingent, in real or personal property, including income and earnings." Tex.
Fam. Code Ann. § 4.001(2). Thomas's trial testimony indicated he was conducting his law
practice under the corporate entity, Thomas N. Thurlow and Associates, a professional
corporation, at the time he married Sheila, and that both he and Sheila signed the premarital
agreement at issue. Based upon the premarital agreement, Thomas asked the trial court to
award him the corporate law firm and its assets, including all cases or interest in cases
belonging to the firm. 

 The record indicates that on February 17, 1995, "Thomas N. Thurlow & Associates,
Inc." merged with "Thurlow, Roth & Garriga, A Professional Corporation," and on the same
day "Thurlow, Roth & Garriga, A Professional Corporation" amended its articles of
incorporation to change its name to "Thomas N. Thurlow & Associates, A Professional
Corporation." When a merger of two corporations takes place, the successor organization
"stands in the shoes of prior management and continues the operations of the prior entity." 
See Greene's Pressure Treating & Rentals, Inc. v. Fulbright & Jaworski, L.L.P., 178 S.W.3d
40, 44 (Tex. App.--Houston [1st Dist.] 2005, no pet.). 

 Sheila next argues that even assuming "Thomas N. Thurlow & Associates, Inc." was
an existing entity on the day the premarital agreement was executed, Thomas has not shown
that he owned it at that time. However, as noted above, it was Sheila's burden to prove the
premarital agreement was not enforceable per the exclusive defenses provided in section
4.006 of the Texas Family Code. See Tex. Fam. Code Ann. § 4.006(c); Sheshunoff, 172
S.W.3d at 694. However, Sheila failed to meet this burden or to preclude a partial summary
judgment on this issue. Further, applying standard rules of contract construction, based on
the record before us, we find the trial court did not abuse its discretion in finding the parties
intended by the written premarital agreement that Thomas' law practice and all its assets and
liabilities were to remain the sole and separate property of Thomas. 

 Sheila also complains in issue one that certain issues were reserved by the trial court
when it granted partial summary judgment for Thomas on the enforceability of the premarital
agreement earlier in the litigation. These "facts and legal issues yet to be proven" are listed
as "assets, conversion and distribution." Sheila contends that because these issues were not
addressed at trial the partial summary judgment was not dispositive of the property described
in the premarital agreement. Sheila provides us with no legal authority here nor does she
attempt to clearly and concisely demonstrate how these "issues" adversely affect her with
regard to the trial court's characterization or partition of spousal property. See Tex. R. App.
P. 38.1(h); Valadez v. Avitia, 238 S.W.3d 843, 845 (Tex. App.--El Paso 2007, no pet.). She
additionally alleges the trial court erred in awarding the law firm to Thomas "without notice
and a hearing as to the characterization of the firm" in violation of Rule 243 of the Texas
Rules of Civil Procedure or having the issue decided by a jury. As noted above, Sheila
personally filed pro se motions on the morning of trial attempting to have "THE DIVORCE
PROCEEDING SCHEDULED TO BEGAN [sic] TODAY July 24, 2006 at 9:00 a.m."
cancelled. After filing her motions, she voluntarily left the courthouse. The failure of a party
to appear for trial shall be deemed a waiver by him of the right to trial by jury. Tex. R. Civ.
P. 220. Therefore, Sheila's complaint about lack of notice is simply without merit. Issue one
is overruled.

 Under issue two, Sheila appears to contend that the 2002 marital agreement re-characterizes the 211 N. Tranquil Path marital residence as her sole and separate property
should the parties ever divorce. With divorce having become a fact, Sheila argues the trial
court erred in failing to award her the entire residence as her separate property. The crux of
this position appears in her brief as follows: 

 It was an undisputed, judicially admitted fact that the equity in the
marital home is Sheila's separate property. When there has been a judicial
admission, the fact is established as a matter of law. Roosevelt v. Roosevelt,
699 S.W.2d 372, 374 (Tex. App.-El Paso 1985, writ dism'd). The trial court's
entry of an order contrary to the facts established as a matter of law is an abuse
of discretion. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). The trial
court compounded its error by supplying the terms to define Sheila's "equity"
under the agreement.


Sheila also contends that "[t]he trial court awarded [her] the equity remaining after
reimbursing for any repairs, realtor fees or attorney's fees incurred by the receiver, payments
made by [Thomas] after July 24, 2006, and taxes." If this was an improper method of
determining Sheila's equity with regard to the marital residence, she provides no authority
to the contrary. See Tex. R. App. P. 38.1(h); Morales v. Morales, 98 S.W.3d 343, 346-47
(Tex. App.--Corpus Christi 2003, pet. denied) (party that merely states an issue without
citation to legal authority or substantive analysis fails to preserve issue for review). Sheila had the burden to prove, by clear and convincing evidence, that the marital
residence purchased by the parties in 2002 was her sole and separate property. See Tex.
Fam. Code Ann. § 3.003(b) (Vernon 2006). The parties executed a post-marital agreement
in 2002, but prior to the purchase of the marital residence. The pertinent portions of the
agreement appear as follows: 

 1. The parties are contemplating the purchase of a home at 211 N.
Tranquil Path, The Woodlands, Texas. In that regard the parties
agree that [Thomas] shall advance certain separate property
funds for the down payment and closing costs due relative to the
purchase. The parties agree that [Thomas's] separate estate
shall be paid back for the funds so advanced upon the sale of the
property of the parties at 1000 Uptown Park Blvd. #24, Houston,
Texas. The remainder of the funds from this sale shall be used
for improvements on the purchased property at 211 N. Tranquil
Path, The Woodlands, Texas. 


 2. In the unlikely event of a divorce between [Thomas] and
[Sheila], [Sheila] shall receive the equity to the property at 211
N. Tranquil Path, The Woodlands, Texas, together with all
furniture and appliances therein as her sole and separate
property. Further, [Thomas] agrees not to encumber the
property at 211 N. Tranquil Path, The Woodlands, Texas, with
any second mortgages on said property, unless [Sheila] gives her
written notarized consent.


 Sheila argues the marital agreement provides the basis for characterizing the marital
residence as her separate property and awarding it to her as such. The plain language of the
agreement, however, does not contain such a recharacterization of the marital estate. It
merely entitles Sheila to "the equity to the property" in the event of a divorce. Although a
portion of her brief properly notes that she has a separate property interest regarding any
equity in the marital residence, Sheila nevertheless interprets this equity-interest as an
entitlement to a judicial ruling that the marital residence is her separate property. However,
her brief again lacks citation to any authority in support of this contention. Tex. R. App. P.
38.1(h). Instead, a single sentence in her brief attempts to supply the legal justification, viz: 
"It was an undisputed, judicially admitted fact that the equity in the marital home is Sheila's
separate property." She directs our attention in the record to Thomas's "Motion For Sale of
Residence," which pleads, among other things, that the marital residence was purchased after
the date of marriage; that the deed and mortgage note for the property reflect Thomas's
name; that since the date of the parties' separation (May 2, 2003), Thomas has financially
supported Sheila including the payment of the monthly mortgage on the marital residence;
that Thomas no longer has the resources available to support Sheila and himself; and during
this period of separation Sheila has refused to gain employment and has refused to make any
attempt to support herself. Thomas's motion does not contain any assertion that the marital
residence itself is Sheila's separate property, or that the parties' 2002 marital agreement
intended to have that legal effect. Sheila does not allege any other "judicial admission" by
Thomas in the record. The marital residence was properly characterized as community
property, with Sheila's separate property interest consisting of the equity in the property and
all the furniture and appliances within the house.

 In context of the instant appeal, the term "equity" simply refers to the "amount by
which the value of or an interest in property exceeds secured claims or liens; the difference
between the value of the property and all encumbrances upon it[.]" (2) Black's Law
Dictionary 580 (8th ed. 2004). According to the receiver's report on the sale of the marital
residence, from the total sale price of the property was deducted certain liens against the real
property and costs and expenses of sale, leaving a net surplus amount. Additional
encumbrances on the net surplus included the receiver's fee and a reimbursement to Tom for
continuing to pay the monthly mortgage note after entry of the divorce decree. An
anticipated refund from the taxing authority was ordered to be added to the net surplus
amount by the trial court. Any surplus balance remaining in the registry of the court was
Sheila's equity and was ordered to be paid to her by the trial court in its order approving the
sale of the marital residence and directing disbursement of the funds. 

 Sheila also contends the trial court erred "by supplying the terms to define Sheila's
'equity' under the agreement." Her complaint, however, is premised on her view that the
entire marital residence was her separate property and could not be used to satisfy community
debts. Again, she provides no factual basis taken from the record nor legal authority in
support for such a characterization on the record before us. Tex. R. App. P. 38.1(h). Upon
this record, we find no error in either the trial court's characterization of the marital residence
or in the disbursement of the surplus funds from its sale. Issue two is overruled.

RECEIVER ISSUES


 Issues three, eleven and twelve complain in various ways of the process by which a
receiver was appointed to sell the marital residence, the sale of the marital residence by the
receiver, the subsequent approval of the sale by the trial court, and of the trial court's order
to disburse the proceeds from the sale according to the terms set out in the divorce decree. 
The trial court has broad authority to divide the marital estate in a manner it deems just and
right. Tex. Fam. Code Ann. § 7.001 (Vernon 2006). That authority sometimes includes the
power to appoint a receiver. See Rusk v. Rusk, 5 S.W.3d 299, 306 (Tex. App.--Houston [14th
Dist.] 1999, pet. denied). A receiver may be appointed either during the pendency of a
divorce or during the pendency of an appeal of the divorce decree for the preservation and
protection of the parties' property as deemed necessary and equitable. See Tex. Fam. Code
Ann. §§ 6.502(a)(5), 6.709(a)(3) (Vernon 2006). The appointment of a receiver is left to the
trial court's sound discretion. Rusk, 5 S.W.3d at 307; Vannerson v. Vannerson, 857 S.W.2d
659, 673 (Tex. App.--Houston [1st Dist.] 1993, writ denied). 

 Through these issues, Sheila seeks to have this court set aside the sale of the marital
residence. As noted herein, the real property was sold, the proceeds distributed pursuant to
the trial court's just and right division of property and the receiver discharged. Thus, these
issues have become moot. When a trial court appoints a receiver to sell real property, and
the real property is sold after the appellant has perfected its appeal, the appeal of the
appointment of the receiver becomes moot. See Beard v. Beard, 49 S.W.3d 40, 72 (Tex.
App.--Waco 2001, pet. denied)(concluding that appeal of appointment of receiver was moot
when real property that was sole subject of receivership had been foreclosed upon after
appellant perfected her appeal). When the judgment of this court can have no effect on an
existing controversy, a case becomes moot and should be dismissed. See F.D.I.C. v. Nueces
County, 886 S.W.2d 766, 767 (Tex. 1994); Restrepo v. First Nat'l Bank of Dona Ana County,
New Mexico, 888 S.W.3d 606, 607 (Tex. App.--El Paso 1994, no writ). Because the property
which was the subject of this appeal has been sold, any judgment issued by the court would
have no effect as there is no longer a controversy to resolve. See F.D.I.C., 886 S.W.2d at
767. Issues three, eleven and twelve are overruled.

 Under issue ten, Sheila asserts that in entering the order in aid of receivership, signed
April 12, 2007, the trial court "materially altered the decree of divorce." Specifically, Sheila
complains of that portion of the order that relieved Thomas from having to make the monthly
mortgage payment on the marital residence during the remaining pendency of the
receivership. Citing simply to Tex. R. Civ. P. 329b without further elaboration, Sheila argues
that at the time the trial court signed the order in aid of receivership, it had lost plenary
power. Again relying only on Rule 329b, she asserts the trial court lost plenary power thirty
days after it entered the divorce decree, and further contends "[e]ither the 'divorce decree'
was a temporary order, and there is no final order in this case, or any actions taken by the trial
court after October 13, 2006 (30 days after the decree was signed) are void." 

 In the portion of the divorce decree appointing the receiver, the following language
appears: 

 6. Except as provided therein, [Thomas] shall continue to make all
payments of principal, interest, taxes, and insurance on the property during the
pendency of the sale or further order of this Court, and [Sheila] shall have the
exclusive right to enjoy the use and possession of the premises until closing or
further order of this Court. . . . The duty of [Thomas] to make all payments
of principal, interest, taxes, and insurance on the property during the pendency
of the sale or further order of this Court and the right of [Sheila] to have the
exclusive right to enjoy the use and possession of the premises until closing or
further order of this Court may be terminated for good cause by the Court
during the pendency of the receivership. (Emphasis added.)


This language clearly places the parties on notice that further orders of the trial court may
issue during the pendency of the receivership. Section 6.079(b) of the Texas Family Code
vests the trial court with continuing jurisdiction to enforce a temporary order issued pursuant
to that section, absent an appellate court acting to supersede the order. See Tex. Fam. Code
Ann. § 6.709(b) (Vernon 2006). We also recognize that "the trial court retains inherent
power to clarify or enforce a divorce decree, so long as the court does not substantively alter
the property division made in the original decree." Karigan v. Karigan, 239 S.W.3d 436, 439
(Tex. App.--Dallas 2007, no pet.). Considering the discussion above, we find no error by the
trial court in entering the further order terminating Thomas's monthly mortgage payment
obligation and overrule issue ten. 


SUPERSEDEAS BOND


 In issue nine, Sheila contends the trial court erred by setting a supersedeas bond in an
excessive amount and in failing to give Sheila sufficient time to post the bond. As mentioned
above, Sheila attempted to stop the receiver from proceeding with the sale of the marital
residence as ordered in the decree, and supplemental order of October 3, 2006. This was
raised in an oral motion by Sheila's trial counsel asking the trial court to either suspend the
October 3 order or set a bond Sheila can post to suspend the effect of the October 3 order. 
The trial court denied both requests. 

 The record shows that the trial court set the supersedeas bond at the balance owed on
the purchase money mortgage secured by the property. A trial judge is given broad discretion
in determining the amount and type of security required. See Solar Soccer Club v. Prince of
Peace Lutheran Church of Carrollton, 234 S.W.3d 814, 832 (Tex. App.--Dallas 2007, pet.
denied). Rule 24.2 of the Texas Rules of Appellate Procedure is couched in terms of setting
a minimum amount for a bond to "adequately protect the judgment creditor against loss or
damage that the appeal might cause." See Tex. R. App. P. 24.2 (a)(2)-(3). Appellant cites
no authorities to support this issue. Tex. R. App. P. 38.1(h). Appellant has not shown any
abuse of discretion on this record. We overrule issue nine.

TEMPORARY SUPPORT


 In issue four, Sheila complains that the trial court improperly weighed the amounts
paid to her as temporary support in making the property division. In a divorce decree, the
trial court "shall order a division of the estate of the parties in a manner that the court deems
just and right, having due regard for the rights of each party and any children of the
marriage." Tex. Fam. Code Ann. § 7.001. "[U]pon final division, the equities of the parties
and final adjustments for the amount of temporary support may be taken into consideration
in making a just and right division of the marital estate." Herschberg v. Herschberg, 994
S.W.2d 273, 278 (Tex. App.--Corpus Christi 1999, pet. denied). "Generally, an appellate
court will not reverse the trial court's division of property unless a clear abuse of discretion
is shown." W.K. v. M.H.K., 719 S.W.2d 232, 236 (Tex. App.--Houston [14th Dist.] 1986,
writ ref'd n.r.e.). To be an abuse of discretion, the disposition must be manifestly unfair and
unjust. Murff v. Murff, 615 S.W.2d 696 (Tex. 1981). Appellant has failed to meet this
burden. Therefore, we overrule issue four.

OMISSION OF AWARD OF ASSETS IN FINAL DECREE


 In issue five, Sheila complains of the trial court's failure to award two assets to
Thomas in the final decree of divorce. The trial court awarded the Palatka Florida
Association and the Vista De San Juan Association to Thomas as his separate property but
such award was not expressly reflected in the decree of divorce. To the extent that there is
a discrepancy between the trial court's rendition and the final decree of divorce, the trial
court may correct the clerical error by judgment nunc pro tunc. "The purpose of a judgment
nunc pro tunc is to correct a clerical error in the judgment after the court's plenary power has
expired." Jenkins v. Jenkins, 16 S.W.3d 473, 482 (Tex. App.--El Paso 2000, no pet.). Here,
the discrepancy between the final judgment entered with the trial court and the judgment that
was actually rendered is clerical because it was not the result from judicial reasoning or
determination. Andrews v. Koch, 702 S.W.2d 584, 585 (Tex. 1986); Universal Underwriters
Ins. Co. v. Ferguson, 471 S.W.2d 28, 29-30 (Tex. 1971). Thus, only to the extent this issue
seeks correction of the clerical error, issue five is sustained.

TORT CAUSES OF ACTION


 Sheila complains in issue seven of the disposition of her several causes of action in
tort alleged against Thomas in the divorce action. While the trial court "defaulted" Sheila,
the only disposition of such causes of action referenced in the final decree of divorce is
contained in the last paragraph wherein the court "ORDERED AND DECREED that all
relief requested in [the] case and not expressly granted is denied." Under the circumstances,
the trial court should have dismissed the tort claims for want of prosecution. See Tex. R.
Civ. P. 165a; Leeper v. Haynsworth, 179 S.W.3d 742, 745 (Tex. App.--El Paso 2005, no
pet.). The final decree of divorce is ordered reformed to reflect that all causes of action for
personal injuries as set forth in paragraphs 17, 18, 19, 20, 21 and 22 of Sheila's Third
Amended Petition for Divorce are dismissed for want of prosecution without prejudice.

 However, Sheila has failed to show how the trial court's erroneous disposition of such
causes of action had any effect on the just and right property division nor does she brief this
issue. Tex. R. App. P. 38.1(h). Therefore, beyond reformation of the disposition of the
personal injury causes of action, issue seven is overruled.


PROPERTY DIVISION


 In issue eight, Sheila makes a global complaint that the cumulative effect of the trial
court's alleged errors evidences an abuse of discretion in that the resulting property division
was made without reference to guiding principles of law. The party who complains of the
trial court's division of property must demonstrate from evidence in the record that the
division was so unjust that the trial court abused its discretion. Zeptner v. Zeptner, 111
S.W.3d 727, 734 (Tex. App.--Fort Worth 2003, no pet.) (op. on reh'g). Sheila does not
discuss the evidence in the record or otherwise attempt to support this issue. Tex. R. App.
P. 38.1(h).

 Sheila further asserts that the trial court erred in entering a property division without
notice and a hearing as to the characterization and value of the property. See Tex. R. Civ.
P. 243. However, the record shows that Sheila had actual notice of the trial setting and
appeared at the courthouse on the day of trial but purposefully absented herself before the
start of trial. Rule 220 of the Texas Rules of Civil Procedure provides that the "[f]ailure of
a party to appear for trial shall be deemed a waiver by him of the right to trial by jury." Tex.
R. Civ. P. 220. Therefore, the trial court was justified in granting Thomas's motion to waive
the jury and in dismissing the jury panel and proceedings with the divorce trial and property
division in Sheila's absence. Issue eight is overruled.

 The trial court's judgment is ordered reformed to render the award of any and all
ownership interest in the Palatka Florida Association and the Vista De San Juan Association
to Thomas as his sole and separate property and to dismiss without prejudice for want of
prosecution all causes of action for personal injuries asserted herein by Sheila. Having
overruled all other issues on appeal, the judgment is affirmed as reformed.

 AFFIRMED AS REFORMED.


 __________________________________

 CHARLES KREGER

 Justice


Submitted on November 15, 2007 

Opinion Delivered November 26, 2008



Before McKeithen, C.J., Kreger and Horton, JJ.
1. Sheila is also mistaken in her assertion that any action taken by the trial court before
ruling on the recusal motion was void. Only the acts of judges subject to mandatory
disqualification are void; even an erroneous denial of a recusal motion does not void or
nullify any subsequent acts by the trial judge. See In re Union Pac. Res. Co., 969 S.W.2d
427, 428 (Tex. 1998) (orig. proceeding).
2. This definition of "equity" is similar to the one set out in the Texas Family Code in
the subchapter pertaining to claims for economic contribution and reimbursement with regard
to marital property. See Tex. Fam. Code Ann. § 3.401(3) (Vernon 2006) ("'Equity' means,
with respect to specific property owned by one or more marital estates, the amount computed
by subtracting from the fair market value of the property as of a specific date the amount of
a lawful lien specific to the property on that same date.'").